THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SIDNEY COLLINS, Defendant-Appellant.

First District (4th Division)   No. 63128

Opinion filed September 29, 1977.

James Geis, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendant, Sidney Collins, charged with burglary in violation of section 19—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 19—1), was found guilty by a jury sitting in the circuit court of Cook County. Subsequently, he was sentenced to a term of 6 to 18 years in the Illinois State Penitentiary. This appeal followed.

The issues presented for review are (1) whether the identification of the defendant was sufficiently proved where he was positively identified outside of the victimized house and was confronted inside the same house with a mask over his head, and (2) whether the defendant was proved guilty beyond a reasonable doubt as to the element of intent where the defendant was discovered inside the victims' house with a nylon stocking on his head and a metal object in his hand.

At the trial, Mrs. Gertrude Kluth testified that on July 2 and July 9, 1974,

she resided with her two sisters, Elsie Gandy and Annette Carge, at 3609 South California, Chicago, Illinois. For the purposes of identification, pattern, and intent, she related that on July 2, 1974, a man had entered her house around 10:30 a.m. and took $50 from her purse and $30 from her sister's purse. According to Mrs. Kluth, the intruder wore a stocking over his head, a light shirt, dark trousers, and dark shoes. He was about 5 feet 9 inches, weighed about 160 pounds, and had a soft, cultured voice. She informed the police about the July 2 incident.

Mrs. Kluth further testified that on July 9, 1974, at approximately 11:30 a.m., she went outside of her residence to check an air-conditioning cable which had not been functioning properly. While inspecting the cable, she saw a man in the next yard walking toward her. She described the man as being about 5 feet 9 inches, weighing 160 pounds, bearded, braided hair, and wearing shorts with ragged edges and a sleeveless T-shirt. She then ran back into the house, locked the door, and went to the upstairs living room where she told Mrs. Gandy that the man who had been in their house a week before was back. They immediately telephoned the police and, after the call, went to the front window where they saw the man standing in the front yard flexing his arms. Mrs. Kluth testified that this was the same man she saw minutes earlier in the next yard.

Next, Mrs. Kluth stated that she called her daughter to tell her the man was back. She and Mrs. Gandy then looked out the front window, did not see him in the yard, turned around, and then saw the man standing in the living room with a nylon stocking over his head which covered his face and with a metallic object in his hand. He wore the same shorts and same sleeveless T-shirt. The intruder told the women to "Get away from that door," in a voice which Mrs. Kluth recognized as that of the man who had been in her home a week earlier. Mrs. Gandy ran for the door and escaped. In the meantime, Mrs. Kluth grabbed the intruder's arm, she was shoved down, and he made his escape down the back stairway. She identified the defendant as the intruder.

Mrs. Kluth further testified that she identified the defendant at the police lineup conducted on July 9, 1974, on the bases of his voice and build, not his face. She stated that the straight razor offered into evidence by the State could have been the metallic object she saw in the intruder's hand.

Mrs. Gandy substantially corroborated Mrs. Kluth's testimony. She related being at home with Mrs. Kluth and Miss Carge on both July 2 and July 9, 1974, and that on July 2, an intruder entered their home, threw a blanket over her head for about 2 minutes, tied her hands, and took three $10 bills from her purse. He was in their home about 30 minutes.

Mrs. Gandy further testified that she next saw the intruder a week later when he was standing in the front yard. He was about 5 feet 9 inches, with

braided hair, and wearing shorts and a sleeveless T-shirt. By the time she and her sister, Mrs. Kluth, had telephoned the police and Mrs. Kluth's daughter, the man was no longer in the front yard. He entered the front of their house with a stocking over his head and something shiny in his hand. When she saw the man, she went to the door screaming. The man said, "Get away from that door." She made it to the street, screaming for help. The man then climbed out of the north downstairs window to the gangway of the next house. By this time, he no longer had the stocking over his head. Neither the stocking nor the T-shirt were recovered from the premises.

In court, Mrs. Gandy identified Mr. Collins as the intruder. She next related that a young man on the street offered his assistance and went after the man. He returned about 3 minutes later, stating that he had kicked the man. She further testified that a police car arrived shortly thereafter. The police went toward the Western-Cullen factory. She then noticed that the screen had been torn. Mrs. Gandy said that on July 9, she recognized the defendant as the man who had entered their home on July 2 by the same build, height, color, and big shoulders.

Patrick Clancy testified that on July 9, 1974, he lived 1 block away from 3609 South California, Chicago, Illinois, and he knew the ladies who resided there because he had done their gardening a few years earlier. He related that as he passed by their home in an automobile, he heard Mrs. Gandy screaming, "The man is back," and stopped to assist. He inspected the gangways and observed the man in the bushes on the north side of the house. Clancy testified that the man was wearing gray cut-off pants with jagged edges, black shoes, black socks, and no shirt, and had a mustache, beard, and braided hair. He identified the defendant as the man he saw in the bushes. He further related that the defendant began to run toward the back of the house. Clancy attempted to stop him by kicking him in the side. After kicking the man, both fell to the ground. As the defendant rose, Clancy noticed a straight razor hanging from the pocket of the man's shorts. The defendant fled in the direction of the Western-Cullen factory. Clancy went back to check on the ladies, told them he had kicked the man, and then proceeded to the factory where he noticed several police cars. The police handcuffed the defendant, and Clancy identified him as the man he had seen in the bushes and had kicked.

Officer Joseph Kwiatkowski testified that around 11:40 a.m. on July 9, 1974, the police received a call from 3609 South California, Chicago, Illinois, to the effect that a man was there who was wanted by the police. The officer and his two partners proceeded to that address. Upon arriving at the scene, Officer Kwiatkowski briefly conversed with Sergeant Sullivan, his superior, and then he and his partners proceeded to the Western-Cullen Manufacturing Company where they found the

defendant. According to the officer, the defendant at that time was wearing "gray cut-offs with stripped ends," white socks, and canvas shoes, and had braided hair with a full beard. The defendant was placed under arrest and given his constitutional rights. A pat-down search revealed a set of keys and a straight razor. The defendant was then taken to the 9th Police District and processed, and his personal articles and clothing were inventoried.

The defendant contends that the State failed to establish beyond a reasonable doubt that he was in fact the individual who committed the crime. He notes that Mrs. Kluth and Mrs. Gandy identified him as the intruder on the bases of height, weight, and voice, and not on the basis of facial characteristics as the intruder's face was obscured by a dark stocking. He argues that the height and weight given were of such a common description as to serve no bases for identification. Defendant further submits that an identification made exclusively on voice is not sufficient to serve as a basis for conviction, especially when the basis for the voice identification was the utterance of five words in an unaccented and undistinguished manner. The People maintain that there was ample evidence to establish the identity of the intruder.

■■ The factors noted and arguments made by the defendant relate to the credibility of the witnesses. The weight given the identification is a question for the trier of fact to consider in connection with other circumstances, and the identification need not be positive in order to support a conviction. (*People v. Oswald* (1963), 26 Ill. 2d 567, 570-71, 187 N.E.2d 685, 687.) Mrs. Kluth saw the defendant as he was coming toward her in the yard; minutes later she and Mrs. Gandy saw the defendant standing in their front yard. Shortly thereafter, the two ladies saw a man of the exact height, weight, and build, and wearing the same clothing, in their living room, with a nylon stocking over his head. After the intruder had exited, Mrs. Gandy saw the same man in the north gangway, this time with the stocking removed. Both women positively identified the defendant as the intruder. Mrs. Kluth further identified the defendant as the intruder at a police lineup on the bases of his height, weight, build, and voice.

The defendant also was positively identified by Patrick Clancy as the man he discovered in the bushes in the north gangway outside 3609 South California on July 9, 1974, moments after the intruder had exited the premises by a lower north window. The defendant fled in the direction of the Western-Cullen factory where minutes later he was discovered and arrested by Officer Kwiatkowski.

A burglary conviction can be predicated upon circumstantial evidence. (*People v. Jackson* (1968), 98 Ill. App. 2d 296, 302, 240 N.E.2d 482, 485.)

In *Jackson*, the witness saw one man inside the gas station and one outside the station around 5:50 a.m. The witness ran down four flights of stairs in time to observe two men, whom he positively identified as the defendants, run out of the back of the station. The police apprehended the defendants shortly thereafter in the vicinity of the gas station. The *Jackson* court held that the evidence was sufficient to support the conviction. The court noted that a reviewing court will not readily substitute its own conclusion unless the proof is so unsatisfactory as to justify a reasonable doubt of guilt. *Jackson*, at 303; accord, *People v. Guido* (1962), 25 Ill. 2d 204, 208, 184 N.E.2d 858, 860.

■■ In the instant case, three witnesses described the defendant as the intruder by his height, weight, build, clothing, and hair style. The defendant had been seen fleeing toward the factory and minutes later was apprehended by the police. He was subsequently identified at a police lineup as the intruder without hesitation. The evidence was sufficient to support the identification of the defendant as the intruder and, as such, the jury was justified in finding that defendant's guilt was proved beyond a reasonable doubt as to this issue.

Secondly, defendant contends that the evidence introduced at trial was insufficient to establish the requisite intent to commit a felony or theft necessary to sustain a burglary conviction. The People maintain that the requisite intent was established by the evidence introduced relating to the events occurring on July 2 and July 9, 1974.

■■ The specific intent to commit a felony or theft must exist at the time of an unauthorized entry into the building of another. (Ill. Rev. Stat. 1973, ch. 38, par. 19—1.) Intent must ordinarily be proved circumstantially by inferences drawn from conduct appraised in its factual environment. (*People v. Johnson* (1963), 28 Ill. 2d 441, 443, 192 N.E.2d 864, 866.) In the absence of inconsistent circumstances, proof of unlawful entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. (*People v. Loden* (1975), 27 Ill. App. 3d 761, 762, 327 N.E.2d 58, 60.) The inference is grounded in human experience which justifies the assumption that the unlawful entry was not purposeless, and in the absence of other proof, indicates theft as the most likely purpose. *People v. Rossi* (1969), 112 Ill. App. 2d 208, 212, 250 N.E.2d 528, 530.

■■ The evidence adduced at trial shows that the intruder entered the residence of Mrs. Kluth and Mrs. Gandy without authority, and appeared in their living room with a nylon stocking over his head and a metallic object in his hand. He ordered Mrs. Gandy to stay away from the door, and when Mrs. Gandy attempted to escape, he lunged at her, knocking down Mrs. Kluth. After Mrs. Gandy escaped, he fled from the premises.

The defendant offered no evidence at trial to explain his presence in the living room of the residence located at 3609 South California with a nylon stocking over his head.

Furthermore, Mrs. Gandy and Mrs. Kluth testified that a man of the same height, weight, color, and build, and with the same voice as the defendant, had entered their home on July 2, a week earlier, and had taken $80 from them. This testimony indicates that the defendant had returned to their home on July 9 to again burglarize the premises since his first attempt was successful. The evidence presented at trial supports the inference that the defendant intended to commit a theft at 3609 South California on July 9, 1974. The record does not reveal any contradictory circumstances sufficient to rebut the inference of an intent to commit theft on the part of the defendant. Therefore, we hold that the jury was warranted in finding that the defendant's guilt was established beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DIERINGER, P. J., and LINN, J., concur.