**Michael DOLAN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**Nos. 345/368, 2006.**

Supreme Court of Delaware.

Submitted: April 4, 2007.

Decided: May 10, 2007.

Bernard J. O'Donnell, Office of the Public Defender, Wilmington, DE, for appellant.

Kevin M. Carroll, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the court en banc.

STEELE, Chief Justice:

Defendant-appellant Michael Dolan appeals his conviction for burglary in the second degree.[1] Dolan argues on appeal that the Superior Court judge who convicted him after a bench trial erred in two respects. Specifically, the trial judge: (1) incorrectly interpreted 11 Del.C. § 825(a) in ruling that Dolan formulated the necessary intent to commit a crime in a dwelling after illegally entering the Delaneys' home and remaining in the home unlawfully; and, (2) erroneously concluded that he did not have to consider the sufficiency of the evidence supporting the inference that Dolan formulated the intent to commit a crime in the Delaney's home at the time he entered it unlawfully. Dolan claims that one accused of violating 11 Del.C. § 825(a) must form the intent to commit a crime inside a dwelling either when or before he enters the dwelling unlawfully.

Whether a defendant must formulate the intent to commit a crime inside a home at the time he enters the home unlawfully, for purposes of the second degree burglary statute, is an issue of first impression.

■ After examining the record and relevant case law, we, joining the majority of jurisdictions, and hold that, to be convicted of second degree burglary,[2] a person must form the intent to commit a crime inside before or at the time he enters the dwelling. The record of the bench trial does not establish that the trial judge considered this factor in his findings supporting the judgment of conviction. Accordingly, we REVERSE and REMAND for further findings and conclusions consistent with this Opinion.

### FACTS AND PROCEDURAL HISTORY

On August 20, 2005, Robert and Robin Delaney went on vacation with their children. The Delaneys asked their neighbor, Eulekoa Kanamee, to watch their house and feed their cat while they were away. They gave Kanamee the key to their house and Robert's cell phone number.

On August 24, 2005, Dolan[3] called the Delaneys while they were in Ocean City, Maryland, and asked them if he could stay at their house. Because of concerns about Dolan's drug and alcohol abuse problems, the Delaneys told Dolan that he could not

---

1. 11 Del. C. § 825(a).

2. Id.

3. Dolan is Robin Delaney's brother.

stay at their house while they were away. During this phone conversation, Dolan asked three different times if he could stay at their house, and each time Robert told him no. Dolan seemed angry, and hung up the phone.

Later that day, Robert checked his voice mail and heard a message from Kanamee asking Robert to call him back. Robert called him back at around 4:30 p.m., Kanamee told Robert that at around 3:30 p.m., Dolan had come over to his house and said "my name is Mike Dolan, and you don't need to come over and feed the cats tonight or watch the house ... I'm going to go ahead and do it." Dolan told Kanamee that he had talked to Robert and had permission to stay at the Delaneys' house. In response, Robert told Kanamee that Dolan "absolutely didn't have permission to be in the house."

After talking to Robert, Kanamee, at around 4:45 p.m., went to the Delaneys' house to check on the cat and get the mail. When Kanamee got there, he noticed that Robert's truck, which had been parked in front of the house at 3:30 p.m., was gone. Later, at approximately 9 p.m., Kanamee heard Robert's truck pull into the driveway. Kanamee looked through his window and saw Dolan get out of the truck and walk towards the Delaneys' house. Kanamee immediately called the Delaneys, and Robert told Kanamee to call 911.

After he called 911, Kanamee continued to observe Dolan as Dolan initially, but unsuccessfully, tried to enter the Delaneys' house through a side door. Kanamee then saw Dolan walk to the back of the house. Approximately five minutes later, a light went on inside the Delaneys' house and Kanamee saw Dolan walk by a second floor window. The police arrived a few minutes later and took Dolan into custody. Officer Dale Legace testified that he found a screen on the ground at the rear left corner of the Delaneys' house with a large cut in the center of it. Legace further testified that the window from which the screen had been removed had a lawn chair placed directly below it.

The Delaneys returned to their house the following morning. After taking inventory of their personal property, they noticed that several items were missing, including $200 in change that was in their daughter's room, a drill, Robert's work credit card, and two six-packs of beer.

At trial, Dolan testified that on August 23, 2005, the day before he was arrested, Robert gave him permission to stay at his house. According to Dolan, Robert told him to go to Kanamee's house to get a key. Dolan testified that when he went to Kanamee's house on August 23 to get a key, no one answered the door. Dolan then went to the Delaneys' backyard and saw "an extension cord running through the back window ... so the window wasn't ... locked." Dolan "pushed the window up and ... went inside the [Delaneys'] house."

Dolan further testified that once he was inside he took the keys to Robert's truck and went to the store. After returning to the house thirty minutes later, Dolan remained there for the rest of the evening of August 23. The next morning, Dolan went into the kitchen, pulled out a beer, and continued to drink the entire morning of August 24. That afternoon, Dolan went to Kanamee's house and introduced himself as the man who would be staying at the Delaneys' house.[4] Afterward, he returned to the house, took some money, and

4. This is the same conversation discussed above that prompted Kanamee to call the Delaneys (i.e., the conversation in which Do-lan "said my name is, Mike Dolan, and you don't need to come over....").

bought beer. Dolan also testified that he took Robert's drill. Finally, Dolan testified that he did not intend to steal when he entered their home, but that he lost control after he started drinking.

Dolan waived his right to a jury trial, and on February 15, 2006, a Superior Court judge found him guilty of burglary in the second degree, misdemeanor theft, and unauthorized use of a motor vehicle. On June 2, 2006, the judge sentenced Dolan to 8 years at level V, suspended after 4 years for 18 months at Level III probation, for the burglary charge; and 1 year at level V, suspended for 1 year Level III probation, for both the theft and motor vehicle charges.

## DISCUSSION

Dolan argues that the State presented no evidence that he intended to commit theft when he entered and remained unlawfully in the Delaney's home. The trial judge, he would have us conclude, had no evidence on which to base a conviction of second degree burglary. Dolan contends

that the trial judge erred when he interpreted 11 *Del.C.* § 825(a) to allow the element of an intent to commit a crime inside the Delaneys' home to be formed while Dolan remained in the home unlawfully. Citing New York case law,[5] Dolan argues that the trial judge applied the second degree burglary statute too broadly, and that a person must form the intent to commit a crime in a dwelling either when or before he enters the premises unlawfully.

■ We review a defendant's challenge to the sufficiency of the evidence "to determine whether a rational trier of fact, considering the evidence in the light most favorable to the prosecution, could find the essential elements of the offense beyond a reasonable doubt."[6] We review a trial judge's interpretation of a statute de novo.[7]

■ The State argues that defense counsel conceded at argument that if someone enters unlawfully and then, once inside, forms the intent to steal, he has committed burglary second.[8] We disagree. Defense counsel, as the cited tran-

---

5. *See People v. Gaines,* 74 N.Y.2d 358, 547 N.Y.S.2d 620, 546 N.E.2d 913 (1989).

6. *Poon v. State,* 880 A.2d 236, 238 (Del.2005).

7. *Patrick v. State,* 2007 WL 773387, *2 (Del.) (Table).

8. At trial, Dolan testified that he did not intend to steal anything from the Delaneys when he entered their home, but he lost control when he started drinking. After Dolan's testimony, his trial counsel requested that the trial judge find him not guilty of burglary in the second degree because the evidence (i.e., Dolan's testimony) indicated that Dolan did not formulate the intent to steal until after he entered the house.

The following exchange took place between defense counsel and the trial judge:
Defense Counsel: Burglary in the second is entering with the intent to commit a crime.
. . .

Defense Counsel: Right, my position is that [Dolan] is not guilty of [burglary second if] he does not have that intent [to commit a crime therein] and if the intent comes or is formed after he is in the house, and started doing, whatever, and decided that he, he needed some dollars, so when he went in, he was in there planning to stay there . . .
Trial judge: Let me explore that for a second. Burglary is not just entering unlawfully, it's also remaining unlawfully, is it not?
Defense Counsel: That is correct.
Trial judge: Okay. Now let me finish my question. [Dolan] has entered unlawfully, and now he's remaining unlawfully, and forms the intent he's going to take some property. Isn't that burglary second?
Defense Counsel: If the facts are, if you are going to find the facts that way. Our position is that he is entering lawfully because he spoke [to the Delaneys] and had the consent.

script indicates, raised the issue before the trial judge at a bench trial. Once the trial judge made it clear that he interpreted the statute differently than defense counsel argued, little purpose would have been served by defense counsel rearguing the issue. Therefore, the defense did not concede the State's legal position, and we review the trial judge's interpretation of our Burglary Second Statute *de novo*.

Under 11 *Del. C.* § 825(a), "[a] person is guilty of burglary in the second degree when the person knowingly enters or remains unlawfully [i]n a dwelling with intent to commit a crime therein." The issue of whether a defendant must form the intent to commit a crime in the dwelling before or at the time he breaks and enters the premises unlawfully is one of first impression.

There is a split of authority among the states with similar statutes; however, a majority of those states that have addressed this issue have held that a person must form the intent to commit a crime in the dwelling either before entering the premises or contemporaneously upon entering the premises.[9] A minority of jurisdictions have held that a person may form the required intent to commit a crime "therein" while he remains unlawfully in the dwelling.[10]

---

Trial judge: Okay, I understand.

Defense Counsel: So, what Your Honor has defined certainly is burglary in the second degree if he enters unlawfully and then forms the intent to do that [commit a crime therein], but what we're saying, Your Honor, is that he entered lawfully or under a belief that he had permission[.]

Trial judge: In which case he is not guilty of any degree of burglary but is guilty of misdemeanor theft.

**9.** The states that have similar statutes and that have addressed the issue and held that a person must formulate the intent to commit a crime therein either before entering the premises or contemporaneous with entry into the premises are: New York (see *People v. Gaines*, 74 N.Y.2d 358, 547 N.Y.S.2d 620, 546 N.E.2d 913 (1989)); Colorado (*See Cooper v. People*, 973 P.2d 1234, 1236 (Colo.1999) ("Thus, to convict a defendant of burglary, a jury must conclude that the defendant had made up his mind to commit some other offense at the point at which he or she becomes a trespasser. If the defendant forms the intent to commit the crime after the trespass is under way, he or she may be guilty of that underlying crime (or attempt) and of trespass—but is not guilty of burglary.")); Hawaii (*See State v. Mahoe*, 89 Hawai'i 284, 972 P.2d 287, 291–292 (1998) ("The intent to commit the offense must have existed at the time the unlawful entry was made."); Alaska (*See Arabie v. State*, 699 P.2d 890, 894 (Alaska Ct.App. 1985)); Illinois (*See People v. Collins*, 53 Ill. App.3d 114, 11 Ill.Dec. 134, 368 N.E.2d 685,

688) (1977)); New Jersey (*See State v. Cuni* 303 N.J.Super. 584, 697 A.2d 550, 555 (App. Div.1997)); Pennsylvania (*See Commonwealth v. Magnum*, 439 Pa.Super. 616, 654 A.2d 1146, 1147 (1995)); Florida (*See Valentine v. State*, 774 So.2d 934, 937 (Fla.App.Ct.2001)); Texas (*See Linder v. State*, 828 S.W.2d 290, 294 (Tex.App.Ct.2001) ("To prove intent to commit a felony or theft in a prosecution for burglary, the State must show that the defendant's intent existed at the time of his entry.")).

**10.** States with similar statutes that have addressed the issue and take the minority position that a person may form the intent while he remains unlawfully are: South Dakota (*See State v. DeNoyer*, 541 N.W.2d 725, 732 (S.D. 1995) ("[W]e conclude that the current burglary statute simply requires that the person remain in the structure after forming the intent to commit a crime.")); Utah (*See State v. Rudolph*, 970 P.2d 1221, 1228–1229 (Utah 1998)) ("In sum, we agree with those cases holding that the "remaining unlawfully" provision applies regardless of whether the initial entry was lawful."); Kansas (*See State v. Skelton*, 247 Kan. 34, 795 P.2d 349 (1990)); Georgia (*See Hewatt v. State*, 216 Ga.App. 550, 455 S.E.2d 104, 106 (1995)) ("The requisite intent necessary for commission of burglary, pursuant to OCGA § 16-7-1(a), need not be formed at the precise moment of entry, but can be formed thereafter while the perpetrator is remaining on the premises."); Alabama (*See Gratton v. State*, 456 So.2d 865 (Ala.Crim.

Under New York law, a person is guilty of the felony of third degree burglary when he "knowingly enters or remains unlawfully in a building with intent to commit a crime therein."[11] In *People v. Gaines*,[12] the Court of Appeals of New York held that a defendant must intend to commit the crime at the time of entry in order to be guilty of third degree burglary.[13] Gaines was a homeless man who entered a building seeking refuge from the cold and heavy snow. When police found him, he was wearing coveralls and a jacket that belonged to a company employee with company pens in the jacket pocket.[14] Gaines argued that the trial judge erred by not instructing the jury that he had to have the intent to commit a crime at the time he entered the premises unlawfully to be guilty of third degree burglary.[15]

The New York Court of Appeals examined common law burglary and New York's former Penal Code for guidance. The Court concluded that "[b]y the words 'remains unlawfully' the Legislature sought to broaden the definition of criminal trespass, not to eliminate the requirement that the act constituting criminal

trespass be accompanied by contemporaneous intent to commit a crime."[16] The Court went on to explain:

In order to be guilty of burglary for unlawful remaining, a defendant must have entered legally, but remain for the purpose of committing a crime after authorization to be on the premises terminates. And in order to be guilty of burglary for unlawful entry, a defendant must have had the intent to commit a crime at the time of entry. In either event, contemporaneous intent is required.[17]

The New York Court held that the trial judge had erred by denying Gaines's requested instruction. It further held that Gaines was "entitled to a charge clearly stating that the jury must find that he intended to commit a crime at the time he entered the premises unlawfully."[18]

In 1935, the Court of General Sessions of Delaware in *State v. Edell* examined common law burglary in relation to the defendant's offense of breaking and entering a dwelling house.[19] The Court noted:

App.1984) ("However, under the criminal code definition of burglary, the intent to commit a crime may be concurrent with the unlawful entry or it may be formed after the entry and while the accused remains unlawfully.")); Oregon (*See State v. Papineau*, 53 Or.App. 33, 630 P.2d 904, 907 (1981) "The crime committed therein is the object of the burglary even though it may not have been the intention of the defendant when he entered the dwelling.").

11. 546 N.E.2d 913, 914 (1989) (citing N.Y. Penal Law § 140.20 (McKinney 2007)). New York's third degree burglary statute is similar to Delaware's second degree burglary statute 11 *Del. C.* § 825(a). We are mindful that 11 *Del. C.* § 825(a)(1) involves a dwelling and N.Y. Penal Law § 140.20 involves a building. For the purposes of our analysis, we are focusing on the "intent to commit a crime therein" element of both statutes. The building/dwelling distinction is not critical.

12. *Id.* at 914.

13. *Id.* at 915–916.

14. *Id.* at 914.

15. *Id.*

16. *Id.* at 915.

17. *Id.* at 915–916.

18. *Id.* at 916.

19. 183 A. 630 (Del.Gen.Sess.1935)

The indictment [was] found under section 4730 of the Revised Code of this state which provide[d] that, "Whoever shall, in the night time, break and enter into the dwelling-house of another person with intent to commit any felony other than that of murder, rape, or arson of the first degree,

Burglary at common law was the breaking and entering of a dwelling house of another in the night time with the intent to commit some felony in the same, whether that felonious intent was executed or not. The Legislature of this state has divided that offense into two offenses, the difference being merely in the statement of the crimes intended to be committed after the breaking and entering.[20]

■ We believe that the current second degree burglary statute, 11 *Del. C.* § 825, continues to require that a person intend to commit a crime in the dwelling he enters unlawfully at the time he enters the dwelling. We join the majority of jurisdictions that so require. Therefore, we conclude that the trial judge erred as a matter of law when interpreting 11 *Del. C.* § 825(a) to read that the element of intent to commit a crime therein could be established by showing that Dolan formulated an intent to commit a crime while remaining unlawfully in the Delaney's home *after* he illegally entered.[21]

During the bench trial, the trial judge made a factual finding that Dolan had the intent to break and enter the Delaneys' home unlawfully. But, the record is silent about whether Dolan formulated his intent to commit a crime in the dwelling either before or at the time he broke into and entered the Delaneys' home illegally.[22]

whether such intent be executed or not, shall be deemed guilty of felony."

20. *Id.*

21. The following exchange took place between defense counsel and the trial judge:

Defense Counsel: Burglary in the second is entering with the intent to commit a crime.
. . .
Defense Counsel: Right, my position is that [Dolan] is not guilty of [burglary second if] he does not have that intent [to commit a crime therein] and if the intent comes or is formed after he is in the house, and started doing, whatever, and decided that he, he needed some dollars, so when he went in, he was in there planning to stay there ...
Trial judge: Let me explore that for a second. Burglary is not just entering unlawfully, it's also remaining unlawfully, is it not?
Defense Counsel: That is correct.
Trial judge: Okay. Now let me finish my question. [Dolan] has entered unlawfully, and now he's remaining unlawfully, and forms the intent he's going to take some property. Isn't that burglary second?
Defense Counsel: If the facts are, if you are going to find the facts that way. Our position is that he is entering lawfully because he spoke [to the Delaneys] and had the consent.
Trial judge: Okay, I understand.
Defense Counsel: So, what Your Honor has defined certainly is burglary in the second degree ˙ if he enters unlawfully and then forms the intent to do that [commit a crime therein], but what we're saying, Your Honor, is that he entered lawfully or under a belief that he had permission—
Trial judge: In which case he is not guilty of any degree of burglary but is guilty of misdemeanor theft.

22. The trial judge made the following factual finding on the record:

With regard to burglary in the Second Degree, the factual issue The Court has to decide is whether the defendant entered with or without the permission of the owners of the house. And the Court finds the defendant guilty because ... the testimony of Mr. and Mrs. Delaney is consistent and coherent.

The testimony of Mr. Dolan concerning his getting permission just doesn't make sense primarily because if you have permission, you don't [persist] in entering and leaving a house through a window and not asking a person who has custody of the key to turn it over and say, a simple thing, you go over and say the Delaneys ... are going to allow me to stay there and they said I can get a key from you.

It's just that simple.

You don't have to concoct a story about you don't have to come over here and take care of the cat[.] I'm going to do that. So the defendant is found guilty of burglary Second Degree.

Therefore, we must reverse the judgment convicting Dolan of Burglary in the Second Degree.

## CONCLUSION

For the foregoing reasons, we REVERSE and REMAND to the Superior Court for further proceedings consistent with this Opinion.