# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ARTHUR STONER, | § | |
| | § | No.  422, 2018 |
| Respondent Below, | § | |
| Appellant, | § | Court Below:   Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID. No. 1711009911 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted:   May 8, 2019
Decided:   July 11, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

Upon appeal from the Family Court.   **REVERSED** and **REMANDED**.

Kevin P. Tray, Esquire, Wilmington, Delaware for Appellant, Arthur Stoner.

Sean P. Lugg, Esquire, Deputy Attorney General, Wilmington, Delaware for Appellee, State of Delaware.

**VAUGHN**, Justice:

## I.   INTRODUCTION

The appellant, Arthur Stoner,[1] appeals from a Family Court order finding him delinquent of Robbery in the Second Degree and Conspiracy in the Second Degree. He makes three claims on appeal.   First, he contends that the finding that he committed Conspiracy in the Second Degree violated his right to due process because it was based on a finding that he violated an uncharged subsection of the conspiracy statute.   Second, he contends that there was insufficient evidence to find him delinquent of Robbery in the Second Degree.   In particular, he contends that the Family Court misconstrued a part of the robbery statute, 11 *Del. C.* § 831(b), which provides that "the phrase 'in the course of committing theft' includes any act which occurs . . . in immediate flight after the attempt or commission of the theft." Third, he contends that 11 *Del. C.* § 512(1), the subsection of the conspiracy statute under which he was found delinquent, is unconstitutionally vague because it does not expressly include the requirement of an overt act.

The State agrees that the Family Court erred when it found Stoner delinquent for violating an uncharged subsection of the conspiracy statute.   According to the State, "The trial court effectively convicted Stoner of an offense for which the State had not charged him.   His adjudication of second degree conspiracy should be

---

[1]  A pseudonym was assigned on appeal pursuant to Supr. Ct. R. 7(d).

vacated."[2]  Because the State concedes error and agrees that Stoner's adjudication of delinquency as to Conspiracy in the Second Degree should be vacated, we accept its concession and have no further need to discuss Stoner's first contention.  For this same reason, Stoner's third contention, that 11 *Del. C.* § 512(1) is unconstitutionally vague, need not be addressed.  We need address only Stoner's contentions relating to the Family Court's finding of delinquency for Robbery in the Second Degree.

## II.  FACTS AND PROCEDURAL HISTORY

On November 16, 2017, at approximately 7:30 p.m., Jessica Halloran exited a restaurant in Trolley Square in Wilmington.  She saw "two guys" across the street "hanging by the Fed Ex box."[3]  Although one of the them, later identified as Tayshaun Gibbs, was facing her, the other, later identified as Arthur Stoner, was facing away from her.  As she crossed the street toward them, Gibbs kept looking up and down from his phone, which illuminated his face "pretty clearly."[4]  Thinking this was odd, Halloran intentionally made direct eye contact with him.  As soon as she did that, he looked down again.  Gibbs was wearing a black hooded sweatshirt and blue jeans.  Although Halloran never saw Stoner's face, she saw that he was wearing a black hooded sweatshirt and khaki pants.

---

[2]  Appellee's Answering Br. at 8-9.
[3]  App. to Appellant's Opening Br. at A9.
[4]  *Id.* at A12.

3

Within a few seconds of Halloran walking past them, Gibbs grabbed a wristlet bag Halloran was carrying, ripping it off the hook strap. Both Gibbs and Stoner immediately ran off, with Stoner slightly ahead, in the direction from which Halloran had come, eventually leaving her sight. Although there was never any communication from either Gibbs or Stoner to Halloran or between Gibbs and Stoner themselves before or during the robbery, Halloran later testified that they appeared to be together.

The police were notified, and shortly thereafter, Gibbs and Stoner were stopped approximately ten blocks away by Corporal David Simmons of the Wilmington Police Department. Approximately twenty minutes after the robbery, Halloran was transported to the area, and she identified Gibbs and Stoner as the two individuals who had robbed her. Recognizing his face, she specifically identified Gibbs as the one who took her wristlet. She identified Stoner based on his clothing. She also identified her wristlet, which had been found near where Gibbs and Stoner were stopped.

At trial, following the conclusion of the State's case, Stoner moved for judgment of acquittal on the robbery charge. Citing the lack of any communications between the two accused and the only evidence pertaining to Stoner being his "mere presence at the scene" and his flight, Stoner argued that there was "simply no evidence that the presence or the actions of [Stoner] indicate[d] that he

was aiding, soliciting, requesting, [or] facilitating the crime of robbery."[5]  The court denied the motion, explaining that there was "sufficient evidence to substantiate the State's claim."[6]

Following closing arguments, the court rendered its verdict.  After noting the requirements for Robbery in the Second Degree, the court stated:

> Now, the question here is what did the Defendant do, since—since the Defendant was not the grabber, what did he do to facilitate that?  Because, the evidence here is, well—that's been suggested by Defense, that all he did was run.
>
> 831B [11 *Del. C.* § 831(b)], in addition to the Order, meaning the phrase, "In the course of committing theft includes any act which occurs in an attempt to [commit] theft or an immediate flight from the attempt or commission of the theft."
>
> So, the—so the act does not end with the snatch, it continues thereafter, as part of the immediate flight.
>
> The Court's satisfied that beyond a reasonable doubt, the Defendant was aware of what was going to happen.  That he had, by his conduct, demonstrated that he was in agreement with that.  And engaged in the immediate flight thereafter from the—from the physical act of the force of the robbery committed by [Gibbs] . . . .
>
> . . . .
>
> . . . The evidence is that they literally took off together, a step behind.  There wasn't any evidence here that the Defendant was surprised by what had occurred.

---

[5] *Id.* at A86-87.
[6] *Id.* at A91.

5

He was part of the act itself. One grabbed, they both ran, virtually simultaneously.

. . . The evidence is beyond a reasonable doubt that the Defendant was intending to facilitate the act, although the physical act, itself, the grab, was done by the other accused.

So, I am finding the Defendant delinquent on both Counts, the Conspiracy 2nd and the Robbery 2nd.[7]

Following the verdict, Stoner was sentenced to indefinite commitment at the Department of Youth Rehabilitation Services, suspended for twelve months of community supervision.

## III. DISCUSSION

Stoner contends that he was merely present at the scene of the robbery committed by Gibbs and that the evidence was insufficient to establish that he acted as Gibbs's accomplice. He contends that the Family Court seems to have misconstrued 11 *Del. C.* § 831(b) to mean that immediate flight is "part of" the commission of Robbery in the Second Degree in every case, even if no force is used or threatened during the flight. That misconception, he argues, led the court to find that the robbery was not concluded when Gibbs took the wristlet bag by force, an act in which Stoner did not participate, but continued through the immediate flight after the theft. In other words, Stoner contends that the Family Court erred by

---

[7] *Id.* at A104-06.

6

finding that his act of fleeing with Gibbs, in and of itself, made him guilty of Robbery in the Second Degree. The State does not address Stoner's argument regarding the court's interpretation of the second-degree robbery statute, but instead argues that there was sufficient evidence that Stoner acted as an accomplice as defined by 11 *Del. C.* § 271(2)(b).

We start with the petition's charging language. Tracking the language of 11 *Del. C.* § 831(a), the petition charged that Stoner "did when in the course of committing theft, use force upon JESSICA HALLORAN with the intent to overcome the resistance to the taking of her property."[8] As mentioned, § 831(b) provides that "the phrase 'in the course of committing theft' includes any act which occurs . . . in immediate flight after the attempt or commission of the theft." Therefore, under § 831(b), an act that occurs during immediate flight after the attempt or commission of theft may be found to be an act that occurs in the course of committing the theft.

In its ruling, the Family Court first explained that the "act [of robbery] does not end with the snatch, it continues thereafter, as part of the immediate flight" and then twice referenced Stoner's immediate flight while finding that he was part of the

---

[8] *Id.* at A143; *see also* 11 *Del. C.* § 831(a) ("A person is guilty of robbery in the second degree when, in the course of committing theft, the person uses or threatens the immediate use of force upon another person with intent to: (1) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking . . . .").

7

robbery itself.[9] Specifically, the court found that Stoner "engaged in the immediate flight thereafter from the—from the physical act of the force of the robbery committed by [Gibbs]" and that Stoner "was part of the act itself."[10]

We think the Family Court's ruling is ambiguous. It appears from the facts before us that the robbery was a completed act when Gibbs ripped Halloran's wristlet off her wrist. The flight was not "part of" Gibbs's act of robbery. The purpose of § 831(b) is to help define the phrase "in the course of committing theft." If a theft begins as one not accompanied by the use or threat of force, but force or the threat of force is used to overcome resistance to flight after the theft, then the threat or use of force during flight can be found, as a matter of fact, to have occurred during the course of committing the theft.[11] Under the facts of this case, Stoner's flight, standing alone, was not part of Gibbs's act of robbery. What the Family Court meant by the statement that "the act [of robbery] does not end with the snatch, it continues thereafter, as part of the immediate flight" is unclear.

There also seems to be ambiguity with regard to the Family Court's findings regarding accomplice liability. When a trial judge, following a bench trial, makes

---

[9] App. to Appellant's Opening Br. at A104, A104-05.

[10] *Id.* at A105.

[11] *See* 11 *Del. C.* § 831 ("A person is guilty of robbery in the second degree when, in the course of committing theft, [including any act which occurs in immediate flight after the attempt or commission of the theft,] the person uses or threatens the immediate use of force upon another person with intent to: (1) Prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking . . . .").

specific findings of fact and conclusions of law, instead of rendering a general verdict, the findings must cover every essential element of the offense.[12] Here, the court's specific findings and conclusions as to whether Stoner was delinquent as an accomplice to robbery are that Stoner: (1) "was aware of what was going to happen," (2) "was in agreement with that," (3) "engaged in the immediate flight thereafter," (4) "was part of the act itself," and (5) "was intending to facilitate the act."[13]

In order to find Stoner delinquent as an accomplice, it must be found that he (1) intended to promote or facilitate the commission of the robbery and (2) aided, counseled, or agreed or attempted to aid Gibbs in planning or committing it.[14] The Family Court clearly found that Stoner intended to facilitate the robbery. However, being "aware" that someone is about to commit a crime and being "in agreement with that" is not necessarily the same as aiding, counseling, or agreeing or attempting to aid the other person in planning or committing the crime. One can know that another is about to commit a crime and agree with that without aiding, counseling, or agreeing or attempting to aid the other person. Moreover, the court's conclusions that Stoner was "engaged in the immediate flight thereafter" and "was part of the act

---

[12] *Scott v. State*, 117 A.2d 831, 833 (Del. 1955); *see also Dolan v. State*, 925 A.2d 495, 496, 501-02 (Del. 2007) (en banc).

[13] App. to Appellant's Opening Br. at A104-05.

[14] *See* 11 *Del. C.* § 271(2)(b) (providing that a person acts as an accomplice when, "[i]ntending to promote or facilitate the commission of the offense," the person "[a]ids, counsels or agrees or attempts to aid the other person in planning or committing it").

9

itself" are ambiguous for the reasons discussed above regarding the court's statements about when the robbery ended. There is no clear finding by the Family Court that Stoner aided, counseled, or agreed or attempted to aid Gibbs in planning or committing the robbery.

When a trial judge's findings are ambiguous, the case may be remanded for the making of more specific findings.[15] We think the best course of action is to remand this matter to the Family Court for the making of more specific findings on the charge of Robbery in the Second Degree.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Family Court is reversed, and the case is remanded to Family Court. The Family Court shall vacate Stoner's adjudication of delinquency for Conspiracy in the Second Degree. In addition, it shall make more specific or such additional findings of fact as may be appropriate with regard to the charge of Robbery in the Second Degree, and it shall "reinstate or vacate the judgment of [delinquency], according to the results indicated by such findings and in accordance with the principles of law laid down in this opinion."[16] Jurisdiction is not retained.

---

[15] *Scott*, 117 A.2d at 833; *see also Dolan*, 925 A.2d at 496, 501-02.
[16] *Scott*, 117 A.2d at 836.

10