IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LUIS R. ROSAS-JOSE, | § | |
| | § | No. 329, 2022 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: Superior |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2010010939 (S) |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: July 12, 2023
Decided: September 25, 2023

Before **SEITZ**, Chief Justice; **LEGROW**, and **GRIFFITHS**, Justices.

## <u>ORDER</u>

Upon consideration of the parties' briefs and the record below, and following oral argument, it appears to the Court that:

(1)  The appellant, Luis R. Rosas-Jose, filed this appeal from his convictions for first-degree rape and first-degree burglary. The appellant argues that his rape convictions should be reversed because the Superior Court erred in admitting into evidence a foreign driver's license, which was the only evidence of the defendant's age. He also contends that his burglary conviction should be reversed because the State failed to present sufficient evidence of intent. After careful consideration of the parties' arguments, we affirm Rosas-Jose's convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

(2)     On October 22, 2020, Delaware State Police were called to a home in Millsboro, Delaware in response to a reported sexual assault.  The complaining witness, K.E.P., was eleven years old at the time of the incident.  A grand jury later indicted Rosas-Jose on several charges, including Burglary First Degree, Possession of Burglar's Tools, Rape First Degree, Rape Second Degree, Unlawful Sexual Contact First Degree, Offensive Touching, and Failure to Comply with Taking Photos and Fingerprints.

(3)     K.E.P. testified at trial that she was alone in her parents' home on October 22, 2020, because her parents were at work and her younger sisters were at school.  The previous day, Rosas-Jose had learned from K.E.P.'s mother that K.E.P. would be the only person in the house the following morning.  K.E.P. testified she awoke on the morning of October 22nd to her "step uncle," Rosas-Jose, grabbing her legs.  Although K.E.P. resisted, Rosas-Jose was able to remove her pants.   He then vaginally raped her.  When K.E.P. kicked him, Rosas-Jose slapped her, causing her to blackout.  After some time, K.E.P. regained consciousness.  Rosas-Jose continued to rape her, and when she asked him to stop, he showed her tape and threatened to bind her hands and mouth if she did not remain quiet. During the hour that Rosas-Jose remained in K.E.P.'s house, he repeatedly penetrated her vaginally and anally and performed other sexual acts against her.

(4)    The physical evidence presented at trial was consistent with K.E.P.'s testimony. A certified sexual assault nurse examined K.E.P. and collected vaginal and rectal swabs from her body. The nurse testified about substantial injuries to K.E.P.'s genital area. The vaginal and rectal swabs contained sperm cells that matched Rosas-Jose's DNA. During their investigation, Delaware State Police also found a roll of Tyvek tape in K.E.P.'s house. There were fingerprints on the tape and the roll that matched Rosas-Jose's fingerprints.

(5)    Rosas-Jose testified in his own defense. He explained to the jury that the residence where K.E.P. lived was Rosas-Jose's brother's house, and Rosas-Jose frequently visited the house to see his brother and—on occasion—to borrow tools for work. Rosas-Jose testified that he went to the residence on October 22, 2020 to borrow his brother's nail gun. Rosas-Jose told the jury that K.E.P. made sexual advances toward him while he was there. Rosas-Jose testified that he became aroused and ejaculated on K.E.P., but he denied that any penetration or intercourse occurred.

(6)    The first-degree and second-degree rape charges against Rosas-Jose required the State to prove that he was 18 years of age or older at the time of the offense.[1] To establish Rosas-Jose's age, the State introduced as an exhibit a driver's

---

[1] 11 *Del. C.* §§ 772(a)(2)(g), 773(a)(5). *See* App. to Answering Br. at B1–9 (indictment).

3

license bearing his name.[2] The birth date listed on the license showed Rosas-Jose was more than 18 years old in October 2020. The license was issued in Mexico.

(7) The arresting officer testified that he found the driver's license in Rosas-Jose's wallet when he searched him incident to his arrest for these charges.[3] Rosas-Jose was arrested on October 22, 2020 while driving a tan colored Honda Odyssey minivan.[4] The arresting officer was looking for that vehicle because Rosas-Jose previously received a traffic ticket in that minivan.[5] In addition to the wallet containing the driver's license, Rosas-Jose also had in his possession another form of identification bearing a different name and date of birth.[6]

(8) Rosas-Jose objected to the driver's license's admission into evidence at trial. He argued that the license could not be authenticated and that the information contained in the license, including the date of birth, was inadmissible hearsay. The State responded that the license was "a document that the defendant was carrying around on him in his wallet as a form of identification," and Rosas-Jose was "representing that this is his birth date by carrying it around to identify himself to different American authorities."[7] The State further argued that the driver's license

---

[2] App. to Answering Br. B12–13 (driver's license issued by Mexico to Luis R. Rosas Jose); App. to Opening Br. at A37, A155–156 (Trial Tr.).
[3] App. to Opening Br. at A155–56 (Trial Tr.).
[4] *Id.*
[5] *Id*. at A156.
[6] *Id.* at A20–21.
[7] *Id*. at A39–40.

4

bore some indicia of reliability and that there would be other evidence presented at trial regarding Rosas-Jose's age.[8] The trial court overruled Rosas-Jose's objection, holding that "the document itself is self-authenticating because it is contained in the documents that the defendant had and there will be other evidence on this issue as well."[9] Notwithstanding the State's representations, the driver's license was the only evidence that the State presented at trial regarding Rosas-Jose's age.[10]

(9) At the close of the State's evidence, Rosas-Jose moved for judgment of acquittal as to the Burglary First Degree and Possession of Burglar's Tools charges.[11] The Superior Court granted the motion with respect to the burglary tools charge but denied the motion as to the Burglary First Degree charge.[12] After a three-day trial, the jury convicted Rosas-Jose of one count of Burglary First Degree, eight counts of Rape First Degree, two counts of Unlawful Sexual Contact First Degree, and one count of Offensive Touching. The jury found Rosas-Jose not guilty of two counts of Rape First Degree, two counts of Rape Second Degree, one count of Unlawful Sexual Contact First Degree, and one count of Failure to Comply with Taking of

---

[8] *Id.* at A39.
[9] *Id. See also id.* at A21.
[10] Although we affirm the Superior Court's admission of the license, we are puzzled by the State's cavalier approach to establishing Rosas-Jose's age, which was an element to several of the key charges in the case. We are reminded of the proverbial horseshoe nail that lost the kingdom.
[11] A291–292. Before trial, the State entered a *nolle prosequi* on two of the Rape First Degree charges. *See* A1, counts 6, 10 (Superior Court docket for Case No. 2010010939).
[12] *Id.* at A295 (Trial Tr.).

Photographs and Fingerprints.[13]  The Superior Court ultimately sentenced Rosas-Jose to a total of 202 years of unsuspended Level V time, followed by periods of partial incarceration and probation.[14]

(10)  Rosas-Jose raises two issues on appeal.  *First*, he argues that the Superior Court erred in admitting the driver's license into evidence because the exhibit was not authenticated and constituted hearsay.  *Second*, Rosas-Jose contends that the Superior Court erred by denying his motion for judgment of acquittal as to Burglary First Degree because the State did not introduce sufficient evidence that he remained in K.E.P.'s residence unlawfully or that he formulated the intent to commit a crime in the residence before or at the time he entered the house.[15]

## ANALYSIS

(11)  This Court reviews "a trial court's ruling admitting or excluding evidence for abuse of discretion."[16]  "An abuse of discretion occurs when a court has exceeded the bounds of reason in light of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice."[17]  We review *de novo* a trial court's denial of a motion for judgment of acquittal.[18]

---

[13] *Id*. at A397–400.
[14] Opening Br. Ex. C (Sentencing Order).
[15] Opening Br. at 10–11.
[16] *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015).
[17] *Chaverri v. Dole Food Co.*, 245 A.3d 927, 935 (Del. 2021) (quoting *Senu-Oke v. Broomall Condo., Inc.*, 77 A.3d 272, 2013 WL 5232192, at *1 (Del. Sept. 16, 2013) (TABLE) (citations omitted)).
[18] *Ways v. State*, 199 A.3d 101, 106–07 (Del. 2018).

**A. The Superior Court did not abuse its discretion by admitting the driver's license into evidence.**

(12)   Rosas-Jose first contends the Superior Court abused its discretion by admitting the driver's license as evidence of his age.  Before and during trial, Rosas-Jose objected to the license's admissibility on the grounds of authenticity and hearsay.  The Superior Court held that the license was "self-authenticating" and overruled the objection without expressly addressing the hearsay issue.

(13)   Although the State concedes that the trial court erred in holding that the license was "self-authenticating," the State urges us to affirm the admission of the license on alternate grounds.[19]  We agree that we may affirm on a different basis than the rationale articulated by the trial court,[20] and we may rule on an issue fairly presented to the trial court, even if the court did not expressly address it.[21]

---

[19] Answering Br. at 10, n.56.

[20] *Fennell v. State*, 879 A.2d 602, 2005 WL 1950215, at *1, n.6 (Del. July 19, 2005) (TABLE); *Unitrin, Inc. v. Am. General Corp.*, 651 A.2d 1361, 1390 (Del. 1995).  Although Rosas-Jose argues that the State waived the hearsay arguments it presents on appeal by not making them to the Superior Court (*see* Reply Br. at 1–2), the authorities Rosas-Jose cites for that position relate to whether a party waives a suppression argument by failing to raise it before the trial court.  *See U.S. v. Dupree*, 617 F.3d 724, 731–32 (3d Cir. 2010); *U.S. v. Tracey*, 597 F.3d 140, 149 (3d Cir. 2010); *State v. LeGrande*, 2008 WL 4817058, at *2 (Del. Super. Oct. 20, 2008).  Those cases are materially different and do not foreclose this Court from affirming a trial court's evidentiary ruling on the basis of a different rationale than that raised during trial.  Moreover, although the State did not argue during trial the precise hearsay rules on which it relies in its appellate brief, the State did reference the factual and legal underpinnings for those rules.  *See* App. to Opening Br. at A19-20 (arguing that the defendant was carrying the license and using it as identification and that the license displayed characteristics of being genuine); *id.* at A38-39 (same).

[21] *Unitrin, Inc.*, 651 A.3d at 1390 (citing *Standard Distrib. Co. v. Nally*, 630 A.2d 640, 647 (Del. 1993)).

7

(14) Regarding the merits of the appeal, Rosas-Jose first argues that the State did not properly authenticate the license under Delaware Rule of Evidence 901. As we recently reiterated, authenticating evidence is not a high burden.[22] The proponent of the evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[23] Once the proponent meets its burden, the judge—as gatekeeper—may admit the evidence into the record, provided it satisfies the other rules of evidence.[24] Although the judge must resolve preliminary questions of admissibility, it is ultimately the jury's province to decide whether to accept or reject the evidence.[25]

(15) In this case, the driver's license's distinctive characteristics satisfied the requirements for authenticity. The license contained a picture the jury could compare to Rosas-Jose along with other information typically found on a license or identification card, including an address, signature, date of birth, and similar features.[26] Those characteristics, combined with the fact that Rosas-Jose was carrying the license in his wallet and driving his car at the time he was arrested, was

---

[22] *Harris v. State*, --- A.3d ---, 2023 WL 4551720, at *7 (Del. July 14, 2023); *Pierce v. State*, 270 A.3d 219, 231 (Del. 2022).

[23] *Harris*, --- A.3d ---, 2023 WL 4551720, at *7 (quoting D.R.E.901(a)).

[24] *Parker v. State*, 85 A.3d 682, 687-88 (Del. 2014).

[25] D.R.E. 104(a), (e); *Parker*, 85 A.3d at 688.

[26] *See* D.R.E. 901(b)(4) (Evidence that satisfies the requirement for authenticity includes "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."). *See also Schaffer v. State*, 184 A.3d 841, 2018 WL 1747793, at *5 (Del. Apr. 10, 2018) (TABLE); *Parker*, 85 A.3d at 685.

more than enough for a jury to conclude that the license belonged to him. In addition, the Superior Court properly gave Rosas-Jose leeway to challenge the weight and credibility of that evidence during cross-examination.[27]

(16)   As to hearsay, the driver's license was admissible because it met the requirements for a non-hearsay adopted admission under Delaware Rule of Evidence 801(d)(2)(B) or alternatively because it satisfied the residual exception to hearsay under Delaware Rule of Evidence 807. Accordingly, although the Superior Court did not specifically address hearsay before overruling Rosas-Jose's objection, we conclude the court did not err by admitting the evidence.

(17)   Under Rule 801(d)(2)(B), a statement is not hearsay if it "is offered against an opposing party" and "[i]s one the party manifested that it adopted or believed to be true."[28] Delaware's rule is identical to Federal Rule of Evidence 801(d)(2)(B), and we accord the federal judiciary's construction of identical rules "great persuasive weight" when we interpret our parallel Delaware rules.[29] Federal courts addressing this hearsay rule have held that a defendant's possession of a document may constitute an "adoptive admission" when "the surrounding circumstances tie the possessor and the document together in some meaningful

---

[27] App. to Opening Br. at A21; *See Harris*, --- A.3d ---, 2023 WL 4551720, at *7(citing D.R.E.. 104(e)).

[28] D.R.E.. 801(d)(2)(B); *Swan v. State*, 820 A.2d 342, 353 (Del. 2003).

[29] *Smith v. State*, 647 A.2d 1083, 1088 (Del. 1994). *See also Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1191 n.11 (Del. 1988).

way."[30]   This test is often called the "possession plus" test.[31]   We approve this "possession plus" test as the correct interpretation of Delaware's adoptive admission rule for non-hearsay.

(18)   The circumstances surrounding Rosas-Jose's possession of the driver's license meet this possession plus standard.  Rosas-Jose was carrying the license in his wallet and driving a vehicle at the time he was arrested.  The license bore his name, and a person with the same name was previously issued a ticket in that minivan.   Although Rosas-Jose did not affirmatively offer the license as identification at the time of his arrest, carrying a driver's license is not a passive exercise, at least while the possessor is driving a vehicle.[32]  Delaware law requires a person to have their license in their "immediate possession at all times when driving a motor vehicle" and to display that license "upon demand" of a law enforcement

---

[30] *U.S. v. Paulino*, 13 F.3d 20, 24 (1st Cir. 1994).  *See also U.S. v. Pulido-Jacobo*, 377 F.3d 1124, 1132 (10th Cir. 2004); *U.S. v. Ospina*, 739 F.2d 448, 451 (9th Cir. 1984); *U.S. v. Marino*, 658 F.2d 1120, 1124–25 (6th Cir. 1981); *U.S. v. Ibarra-Ramirez*, 2012 WL 12903868, at \*1 (D. Ariz. Mar. 23, 2012); *U.S. v. Cuesta*, 2007 WL 2729853, at \*17 (E.D. Cal. Sept. 19, 2007).

[31] *Pulido-Jacobo*, 377 F.3d at 1132 ; *Paulino*, 13 F.3d at 24.

[32] *See Jones v. State*, 127 So.3d 622, 625 (Fla. Dist. Ct. App. 2013) (the defendant's possession of license while driving constituted an adoptive admission even if the defendant did not voluntarily provide the license to a police officer); *Cuesta*, 2007 WL 2729853, at \*17 (the defendant's possession of license and display of that license to park ranger constituted an adoptive admission); *cf Paulino*, 13 F.3d at 24 (money order receipt bearing the defendant's name was admissible to show that the defendant paid rent on an apartment when the evidence showed the defendant frequented the premises, the receipt bore his name, and he had the only known key to the apartment in his possession); *Ibarra-Ramirez*, 2012 WL at \*1–2  (vehicle registration constituted an adoptive admission when the defendant was the vehicle's sole occupant, the registration was located in the vehicle, the registration bore the defendant's name, and the defendant stated that he owned the vehicle).

officer.[33] Under these circumstances, Rosas-Jose adopted the information contained in the license and it therefore was not hearsay under Rule 801(d)(2)(B).

(19) In addition to being an adoptive admission, the driver's license also satisfies the residual exception to the hearsay rule and was alternatively admissible on that basis. A hearsay statement fits within the residual exception when admitting the statement will serve the rules' purposes and the interests of justice, and the proponent demonstrates that the statement: (i) has equivalent circumstantial guarantees of trustworthiness; (ii) is offered as evidence of a material fact; and (iii) is more probative on the point for which it was offered than any other evidence that the proponent can reasonably obtain.[34]

(20) The record established by the State met those elements. Persons seeking an official government identification card or license typically are required to provide evidence verifying their age and address, which lends the license guarantees of trustworthiness similar to other exceptions to the hearsay rule.[35] Rosas-Jose's decision to carry the license in his wallet also indicates that he subscribed to the accuracy of the information contained in the license, so its

---

[33] 21 *Del. C.* § 2721(b).
[34] D.R.E. 807(a). Rule 807(b) also requires the proponent to give the adverse party notice of the intent to offer the statement. Rosas-Jose has not argued that he did not receive notice of the State's intention to introduce the license, and the parties raised the evidentiary dispute with the Superior Court before trial, which indicates that the defense received advanced notice of the State's intent to rely on the license as proof of Rosas-Jose's age. *See* App. to Opening Br. at A16–20 (Trial Tr.).
[35] *See* D.R.E. 803 (6), (8).

introduction served the rules' purposes and the interests of justice.[36]  Rosas-Jose's age was an element of the crimes charged and therefore was a material fact, and the license was more probative on the question of his age than any other evidence—such as testimony from a family member—that the State reasonably could produce. Accordingly, we affirm the admission of the driver's license at trial, albeit on a different basis than that articulated by the Superior Court.

### B. The Superior Court properly denied Rosas-Jose's motion for judgment of acquittal.

(21)     Rosas-Jose separately argues that the Superior Court erred in denying his motion for judgment of acquittal on the first-degree burglary charge.  On appeal from the denial of a motion for judgment of acquittal, we apply the same standard as the trial court.  That is, we consider whether "any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime."[37]  In order to find Rosas-Jose guilty of Burglary First Degree, the jury was required to find beyond a reasonable doubt that he knowingly entered or remained unlawfully in an occupied dwelling with the intent to commit a crime therein, and raped K.E.P. while in the dwelling.[38]  Rosas-Jose contends that the State did not present sufficient evidence

---

[36] *See* D.R.E.. 102 ("These Rules shall be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination.").

[37] *Cline v. State*, 720 A.2d 891, 892 (Del. 1998).  *See also Ways*, 199 A.3d at 106–07.

[38] *See* 11 *Del. C*. § 826(b); App. to Answering Br. at B1 (Indictment, Count I).

that he remained unlawfully in K.E.P.'s residence and formulated the necessary intent to commit a crime before or at the time he entered the dwelling.[39]

(22) The Superior Court correctly concluded that a rational fact-finder could find Rosas-Jose guilty of first-degree burglary. First, with respect to whether he entered or remained unlawfully in K.E.P.'s residence, Rosas-Jose did not reside in the home, and K.E.P.'s mother testified that she did not give Rosas-Jose permission to enter the home that morning. K.E.P. testified that the door was locked that morning, and when Rosas-Jose came to the room where she was sleeping, she kicked him and tried to get away from him. That evidence was sufficient for a rational trier of fact to conclude that Rosas-Jose entered, or at least remained, unlawfully in the home. Second, with respect to the element of intent, Rosas-Jose incorrectly argues that the State was required to prove that he formulated the intent to commit a crime before or at the time he entered the residence. Although that was a correct statement of the law under a previous version of the Burglary First Degree statute,[40] Delaware law now provides that the requisite intent for burglary may be formed before the unlawful entry, concurrent with the unlawful entry, or after the entry while the person remains unlawfully.[41] The State provided ample evidence that Rosas-Jose

---

[39] Opening Br. at 10–11.
[40] *Dolan v. State*, 925 A.2d 495, 498–501 (Del. 2007).
[41] 11 *Del. C.* § 829(f). That subsection was added in 2008. *See* 76 Del. Laws c. 267, § 1.

13

formulated the intent to rape K.E.P. while he remained unlawfully in her dwelling, a conclusion even Rosas-Jose does not dispute.[42]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Abigail M. LeGrow
Justice

---

[42] *See* Opening Br. at 11 ("[a]ny criminal *mens rea* was established after encountering [K.E.P.]").

14